IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT,
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO.: 2017-001358-CA-01 (43)

CARLOS HAKIM-DACCACH,

          Plaintiff,

vs.

KNAUF INTERNATIONAL GmbH, a foreign
corporation; KNAUF INSULATION GmbH,
a foreign corporation,

          Defendants.

_____/

## VERIFIED COMPLAINT

Plaintiff, CARLOS HAKIM-DACCACH, by and through his undersigned counsel, sues

Defendants KNAUF INTERNATIONAL GmbH ("Knauf International") and KNAUF

INSULATION GmbH (collectively "Knauf" or "Defendants"), alleging as follows:

### JURISDICTION, PARTIES AND VENUE

1.      This is a complaint for damages in excess of $15,000, exclusive of attorney's fees

and costs, and which is within the jurisdictional limits of this Court.

2.      Plaintiff, Carlos Hakim-Daccach ("Hakim"), is an individual residing in Miami-

Dade County, Florida.

3.      Defendant, Knauf International GmbH, is a foreign corporation that does business

in Florida and, upon information and belief, maintains a bank account in Miami, Florida.

4.      Defendant, Knauf Insulation GmbH, is a foreign corporation that does business in

Florida and, upon information and belief, maintains a bank account in Miami, Florida.

**EXHIBIT "A"**

5.      Venue is proper in Miami-Dade County, Florida because (a) the property which is the subject of this lawsuit is located in Miami-Dade County, Florida and (b) the causes of action accrued in Miami-Dade County because, among other things, Knauf's wrongful failure to disburse escrowed funds to Hakim occurred in Miami-Dade County.

6.      All conditions precedent for filing and maintaining this action have been performed, waived or excused.

### GENERAL ALLEGATIONS

7.      Gyptec, S.A. ("Gyptec") is a Colombian drywall business.  In August 2015, Gyptec sold a majority of its assets to Knauf International.

8.      Hakim is a 33.33% owner of Ukiah International Corp. ("Ukiah") and Arkata Investment, Inc. ("Arkata") (collectively "Panamanian companies).  The Panamanian companies own over 99% of Gyptec.  As a consequence, Hakim is an approximately 33.33% owner of Gyptec.

9.      Despite being a 33.33% owner of Gyptec, Hakim was not advised of the sale of Gyptec's assets to Knauf International.  Hakim – through ongoing litigation with Gyptec in Colombia – was able to discover some facts concerning the sale, but Hakim still does not have all the details regarding the sale, including a copy of the Purchase and Sale Agreement which he was entitled to receive but has not.

10.    Another Gyptec owner is Jorge Hakim Tawil ("Tawil").  Tawil is Hakim's cousin. Tawil is (or, at minimum, at one point was) a fugitive from the law.  Tawil was indicted in New York several years ago for bank embezzlement.  The criminal case against Tawil is still pending and there remains an active arrest warrant for Tawil.

HELLER WALDMAN, P.L.
3250 MARY STREET, SUITE 102 • COCONUT GROVE, FLORIDA 33133

{00220534.DOCX }

11. In an October 10, 2011 arbitration award ("Award"), a Colombian arbitration tribunal, explicitly recognized Hakim's one-third ownership interest in the Panamanian companies. Under Colombian law, the Award has the same weight and effect as a civil judgment.

12. The Bogota Superior Tribunal (equivalent of a Florida Circuit Court of Appeals) subsequently confirmed the Award, dismissing a motion to vacate the Award – correspondent to an appellate affirmance. Moreover, the Supreme Court of Panama has recently, in an August 31, 2016 ruling, granted recognition and enforcement of the Colombian Award in Panama. In its ruling, the Panama Supreme Court identified that "Carlos Hakim . . . [holds] an ownership interest of 33% of each [of the Panamanian companies]." As such there is no legal doubt that Hakim has such ownership interest and is entitled to his requisite portion of the purchase funds.

13. This acknowledgment, though it was a protracted proceeding, was the equivalent of a full faith and credit recognition, which was necessarily pursued because Tawil refused to turn over the requisite shares in the Panamanian companies based on the two Colombian Tribunals' rulings.

14. In addition to the above noted arbitration, the parties have been engaged in multiple other legal proceedings relative to Hakim's ownership interest in Gyptec and Tawil's mismanagement of Gyptec.

15. One such proceeding was an action that Hakim commenced against Tawil (and other Gyptec officers and directors) for breach of fiduciary duty and embezzlement of corporate funds. This action was filed with the *Superintendencia de Companias* in Colombia.

{00220534.DOCX }

16. On or about August 2015 and while the *Superintendencia* proceeding was still pending, Gyptec, as noted, sold a majority of its assets to Knauf International, a multinational producer of building material based in Germany, for approximately $58,500,000.

17. Hakim, as noted, was not provided the specifics of the sale. Hakim, however, was just recently able to confirm that, Knauf International, through its due diligence, discovered, among other things, the existence of the *Superintendencia* proceeding. A Knauf representative in a parallel Colombian proceeding recently testified that Knauf International, as a result of the pendency of the *Superintendencia* proceeding, required that approximately $20,000,000.00 of the $58,500,000.00 purchase price be held in escrow until the conclusion the *Superintendencia* proceeding. On June 9, 2016 the *Superintendencia* issued its ruling finding, among other things, that Tawil had breached his fiduciary duties and embezzled funds from Gyptec for his personal use.

18. As referenced above, Hakim's recent knowledge stems from the sworn testimony of a Knauf representative in related litigation in Colombia. Specifically, on October 11, 2016, Miguel Fernando Rangel Galvis, the Legal Representative of Knauf Colombia, testified that the entire purchase transaction occurred through a Knauf account in Miami, Florida and that the $20,000,000.00 escrowed funds were escrowed by Knauf in an account in Miami, Florida. He further testified that it was expected that, upon the termination of the *Superintendencia* proceedings, the $20,000,000.00 would be released.

19. Upon information and belief, the $20,000,000 in escrowed funds remains in an account located in Miami, Florida.

20. Notwithstanding the recognition of Hakim's, one-third ownership interest in Gyptec (through the Panamanian companies) by both the (two) Colombian and (one) Panamanian

tribunals, which entitles him to one-third of the sales proceeds, no effort has been made by Knauf to contact Hakim or to make arrangements to provide Hakim with the $19,498,050.00. (33.33% portion of the $58,500,000 sales price) or one third of the gross sale amount that represent his interest.

21. To date, Hakim has not received any money from the sale of Gyptec to Knauf, notwithstanding his one third ownership.

22. Because of the acts of Tawil in refusing to acknowledge Hakim's legitimate interest, Hakim was shut out of all corporate affairs during the time of the transaction with Knauf. Consequently, Hakim does not possess a copy of the Sales Agreement or any separate agreement (if it exists) for the escrowing of these funds.

23. As the *Superintendencia* ruled against Tawil and in Hakim's favor over six (6) months ago and Hakim has heard nothing in that time, and notwithstanding the prudent actions taken by Knauf to put these funds into escrow at the time of the closing, Hakim wants to insure that these substantial monies are turned over to him forthwith.

24. In addition, because of the past bad acts of Tawil – evidenced by the *Superintendencia* ruling that Tawil previously embezzled funds from Gyptec, his being a fugitive from the law here in the U.S. (due to financial irregularities here) and his complete disregard for both Hakim's ownership interest in Gyptec and the rulings of the various tribunals – Hakim justifiably fears that Knauf will either release the $20,000,000 to Gyptec – a company over which Tawil improperly exercises control – or  that Tawil will find a way to abscond to Colombia with the $20,000,000, of which $19,498,050 or whatever amount is equal to 1/3rd the gross sale price, belongs to Hakim.

{00220534.DOCX }

25. Hakim, in fact, has been forced to institute criminal proceedings against Tawil in Colombia as a result of Tawil's failure to provide to Hakim his shares in the Panamanian companies, as ordered by several courts. The Colombian criminal court has already determined that there exists probable cause to pursue the criminal action against Tawil for not complying with the arbitration tribunal's mandate requiring that the shares be provided to Hakim and for abuse of trust as the legal representative of Gyptec.

26. Accordingly, Hakim, is entitled to $19,498,050.00 or the amount equivalent to one third of the gross sale price from the funds that Knauf is holding in escrow and demands that these funds be turned over forthwith.[1]  However, Knauf, instead of disbursing these funds to Hakim, continues to improperly hold the funds in escrow.

27. Hakim has retained the undersigned law firm to represent his interest in these proceedings and has obligated himself to pay it reasonable attorney's fee and court costs.

## COUNT I-REPLEVIN

28. Hakim realleges and hereby incorporates by reference each and every allegation contained within Paragraphs 1 through 27 above as though fully set forth in this cause of action.

29. This is an action to recover possession of personal property in Miami-Dade County, Florida.

30. The description of the property is $19,498,050.00 ("property") of the $20,000,000 being held in escrow by Knauf, or an amount equivalent to one third of the gross sale price.

31. To the best of Hakim's knowledge, information and belief, the property is located in a Knauf bank account in Miami, Florida.

---

[1] To the extent the totality of these funds do not satisfy in full Hakim's one third interest, Hakim reserves the right to pursue the remainder in other proceedings where the money is situated.

HELLER WALDMAN, P.L.
3250 MARY STREET, SUITE 102 • COCONUT GROVE, FLORIDA 33133

{00220534.DOCX }

32. Hakim is entitled to the possession of the property as the 33.33% owner of Gyptec, whose assets Knauf purchased for what is believed the gross sum of $58,500,000.00.

33. The property is wrongfully detained by Knauf. Knauf came into possession of the property by withholding the funds following Knauf's purchase of Gyptec's assets.

34. To Hakim's best knowledge, information and belief, Knauf detains the property because Knauf is unsure as to which Gyptec owners to distribute the property to, though at this juncture any uncertainty that existed has been resolved in favor of Hakim as to one third of the sales amount.

35. The property has not been taken for any tax assessment or fine pursuant to law.

36. The property has not been taken under an execution or attachment against Hakim's property.

WHEREFORE, Plaintiff, Carlos Hakim-Daccach, demands judgment for possession of the property from Defendants, Knauf International, GmbH and Knauf Insulation, GmbH, and any other relief the Court deems just and proper.

## COUNT II-BREACH OF CONTRACT

37. Hakim realleges and hereby incorporates by reference each and every allegation contained within Paragraphs 1 through 27 above as though fully set forth in this cause of action.

38. Knauf International entered into an Asset Purchase Agreement ("Agreement") with Gyptec, pursuant to which it agreed to pay $58,500,000.00 for Gyptec's assets.

39. Hakim is a 33.33% owner of Gyptec and third-party beneficiary to the Agreement.

40. Knauf International has breached the Agreement by not providing to Hakim his portion of the $58,500,000 sales price – $19,498,050.00.

41. As a result of this breach, Hakim has been damaged.

HELLER WALDMAN, P.L.
3250 MARY STREET, SUITE 102 • COCONUT GROVE, FLORIDA 33133

{00220534.DOCX }

WHEREFORE, Plaintiff, Carlos Hakim-Daccach, demands judgment against Defendant Knauf International, GmbH for damages to be proved at trial, including interest, costs and all other relief this Court deems just and proper.

## COUNT III-UNJUST ENRICHMENT
### (Pleaded in the Alternative to Count II)

42. Hakim realleges and hereby incorporates by reference each and every allegation contained within Paragraphs 1 through 27 above as though fully set forth in this cause of action.

43. Hakim is a 33.33% owner of Gyptec. Hakim, in consequence, is a 33.33% owner of the Gyptec assets.

44. Gyptec's assets were sold to Knauf International in exchange for what is believed to be the gross sum of $58,500,000.00.

45. Knauf International voluntarily accepted and retained Gyptec's assets – 33.33% of which belongs to Hakim.

46. Knauf International, however, retains in escrow $20 million dollars of which Hakim is entitled to $19,498,050.00 (which represents 33.33% of the believed purchase price), or an amount equal to one third of the gross sale price .

47. The circumstances are such that it would be inequitable for Knauf International to accept and retain Hakim's 33.33% of Gyptec's assets without paying the value thereof to Hakim.

WHEREFORE, Plaintiff, Carlos Hakim-Daccach, demands judgment against Defendant Knauf International, GmbH for damages to be proved at trial, including interest, costs and all other relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Hakim hereby demands a jury trial on all issues so triable.

Dated: January 17, 2017

HELLER WALDMAN, P.L.
3250 Mary Street, Suite 102
Coconut Grove, Florida 33133
Telephone: (305) 448-4144
Telecopier: (305) 448-4155

By: /s/ *Glen H. Waldman*
    Glen H. Waldman, Esq.
    Fla. Bar No. 618624
    Michael A. Sayre, Esq.
    Fla. Bar No. 17607

## VERIFICATION

Under penalty of perjury, the undersigned, Carlos Hakim-Daccach, declares that he has read the foregoing Complaint and that the facts set forth herein are true and correct to the best of his knowledge and belief.

By:

CARLOS HAKIM-DACCACH

{00220534:DOCX;}

 **CT Corporation**

**Service of Process Transmittal**
01/25/2017
CT Log Number 530575969

**TO:**   Stephan Geilser
Energy Response Corps
One Knauf Drive
Shelbyville, IN 46176

**RE:**   **Process Served in Indiana**

**FOR:**   Knauf Insulation GMBH  (Domestic State: AN)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | CARLOS HAKIM-DACCACH, Pltf. vs. KNAUF INTERNATIONAL GmbH, etc. and KNAUF INSULATION GmbH, etc., Dfts. |
| **DOCUMENT(S) SERVED:** | Summons, Cover Sheet, Verified Complaint, First Request |
| **COURT/AGENCY:** | Miami-Dade County Circuit Court, FL<br>Case # 2017001358CA0143 |
| **NATURE OF ACTION:** | Defendant failure to provide to Hakim his shares in the Panamanian companies, as ordered by several courts |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Indianapolis, IN |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 01/25/2017 at 15:00 |
| **JURISDICTION SERVED :** | Indiana |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days after service, exclusive of the day of service |
| **ATTORNEY(S) / SENDER(S):** | Glen H. Waldman<br>HELLER WALDMAN, P.L.<br>3250 Mary Street, Suite 102<br>Coconut Grove, FL 33133<br>305-448-4144 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  UPS Next Day Air , 1Z0399EX0117582547 |
| **SIGNED:**<br>**ADDRESS:** | C T Corporation System<br>150 West Market Street<br>Suite 800<br>Indianapolis, IN 46204 |
| **TELEPHONE:** | 312-345-4336 |

Page 1 of  1 / AP

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package onl

**EXHIBIT "B"**

Filing # 51440861 E-Filed 01/20/2017 03:12:22 PM

| | | CASE NUMBER |
|---|---|---|
| X  IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. ☐ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. | | |

| DIVISION X  CIVIL      ☐ OTHER ☐ DISTRICTS | SUMMONS 20 DAY CORPORATE SERVICE (a) GENERAL FORMS | CASE NUMBER 2017-001358-CA-01 |
|---|---|---|
| PLAINTIFF(S) Carlos Hakim-Daccach | VS.  DEFENDANT(S) Knauf International GmbH, a foreign corporation and Knauf Insulation GmbH, a foreign corporation | SERVICE |

THE STATE OF FLORIDA:

To Each Sheriff of the State:

YOU ARE COMMANDED to serve this summons and copy of the complaint or petition, and Request for Production in this action on defendant(s): Knauf Insulation GmbH, a foreign corporation, by and through its Registered Agent, CT Corporation System, 150 West Market Street, Suite 800, Indianapolis, IN 46204

CLOCK IN

Each defendant is required to serve written defense to the complaint or petition on Plaintiff's Attorney: Glen H. Waldman, Esq., Heller Waldman P.L. whose address is: 3250 Mary Street, Suite 102, Coconut Grove, FL 33133. Tel.: 305-448-4144

within 20 days * Except when suit is brought pursuant to s. 768.28, Florida Statutes, if the State of Florida, one of its agencies, or one of its officials or employees sued in his or her official capacity is a defendant, the time to respond shall be 40 days. When suit is brought pursuant to 768.28, Florida Statutes, the time to respond shall be 30 days." after service of this summons on that defendant , exclusive of the day of service, and to file the original of the defenses with the Clerk of this Clerk Court either before service on Plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

| HARVEY RUVIN CLERK of COURTS | Natalie Maka    308631 DEPUTY CLERK | DATE 1/23/2017 |
|---|---|---|

## AMERICANS WITH DISABILITIES ACT OF 1990
### ADA NOTICE

"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Ave., Suite 2702, Miami, FL 33128, Telephone (305) 349-7175; TDD (305) 349-7174, Fax (305) 349-7355 at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711."

CLK/CT. 314 Rev. 02/16                                    Clerk's web address: www.miami-dadeclerk.com

| ☒ IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. |
| ☐ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. |

| DIVISION<br>☒ CIVIL<br>☐ DISTRICTS<br>☐ FAMILY<br>☐ OTHER | **CIVIL COVER SHEET** | CASE NUMBER<br><br>2017-001358-CA-01 (43) |
|---|---|---|

| PLAINTIFF<br><br>Carlos Hakim-Daccach | VS. DEFENDANT<br><br>Knauf International GmbH, a foreign corporation and Knauf Insulation GmbH, a foreign corporation | CLOCK IN |
|---|---|---|

The civil cover sheet and the information contained here does not replace the filing and service of pleadings or other papers as required by law. This form is required by the Clerk of Court for the purpose of reporting judicial workload data pursuant to Florida Statute 25.075. See instructions and definitions on reverse of this form.

**TYPE OF CASE** (If the case fits more than one type of case, select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x in both the main category and subcategory boxes.

☐ 001 - Eminent Domain
☒ 003 - Contracts and Indebtedness
☐ 010 - Auto Negligence
☐ 022 - Products Liability
☐ 023 - Condominium
☐ Negligence - Other
  ☐ 097 - Business Governance
  ☐ 098 - Business Torts
  ☐ 099 - Environmental/Toxin Tort
  ☐ 100 - Third Party Indemnification
  ☐ 101 - Construction Defect
  ☐ 102 - Mass Tort
  ☐ 103 - Negligent Security
  ☐ 104 - Nursing Home Negligence
  ☐ 105 - Premises Liability - Commercial
  ☐ 106 - Premises Liability - Residential
  ☐ 107 - Negligence - Other
☐ Real Property/Mortgage Foreclosure
  ☐ 108 - Commercial Foreclosure $0 - $50,000
  ☐ 109 - Commercial Foreclosure $50,001 - $249,999
  ☐ 110 - Commercial Foreclosure $250,000 - or more
  ☐ 111 - Homestead Residential Foreclosure $0 - $50,000
  ☐ 112 - Homestead Residential Foreclosure $50,001 - $249,999
  ☐ 113 - Homestead Residential Foreclosure $250,000 or more
  ☐ 114 - Non-Homestead Residential Foreclosure $0 - $50,000
  ☐ 115 - Non-Homestead Residential Foreclosure $50,001 - $249,999
  ☐ 116 - Non-Homestead Residential Foreclosure $250,000 or more
  ☐ 117 - Other Real Property Actions $0 - $50,000
  ☐ 118 - Other Real Property Actions $50,001 - $249,999

☐ 119 - Other Real Property Actions $250,000 or more
☐ Professional Malpractice
  ☐ 094 - Malpractice - Business
  ☐ 095 - Malpractice - Medical
  ☐ 096 - Malpractice - Other professional
☐ Other
  ☐ 120 - Antitrust/Trade Regulation
  ☐ 121 - Business Transactions
  ☐ 122 - Constitutional Challenge - Statute or Ordinance
  ☐ 123 - Constitutional Challenge - Proposed amendment
  ☐ 124 - Corporate Trust
  ☐ 125 - Discrimination - Employment or Other
  ☐ 126 - Insurance Claims
  ☐ 127 - Intellectual Property
  ☐ 128 - Libel/Slander
  ☐ 129 - Shareholder Derivative Action
  ☐ 130 - Securities Litigation
  ☐ 131 - Trade Secrets
  ☐ 132 - Trust Litigation
☐ 133 - Other Civil Complaint
  ☐ 009 - Bond Estreature
  ☒ 014 - Replevin
  ☐ 024 - Witness Protection
  ☐ 080 - Declaratory Judgment
  ☐ 081 - Injunctive Relief
  ☐ 082 - Equitable Relief
  ☐ 083 - Construction Lien
  ☐ 084 - Petition for Adversary Preliminary Hearing
  ☐ 085 - Civil Forfeiture
  ☐ 086 - Voluntary Binding Arbitration
  ☐ 087 - Personal Injury Protection (PIP)

## COMPLEX BUSINESS COURT

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order. Yes ☒ No ☐

REMEDIES SOUGHT (check all that apply):

☒   monetary;

☒   non-monetary declaratory or injunctive relief;

☐   punitive

NUMBER OF CAUSES OF ACTION: [ 3 ]

(specify) Replevin, Breach of Contract, Unjust Enrichment

IS THIS CASE A CLASS ACTION LAWSUIT?

☐  Yes

☒  No

HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?

☒  No

☐  Yes   If "Yes", list all related cases by name, case number, and court.

IS JURY TRIAL DEMANDED IN COMPLAINT?

☒  Yes

☐  No

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief.

Signature _____   Florida Bar # _____ 618624 _____
            Attorney or party                                    (Bar # if attorney)

Glen H. Waldman, Esq.                              01/17/17
_____                         _____
(type or print name)                               Date

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT,
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO.: _2017-001358-CA-01 (43)_

CARLOS HAKIM-DACCACH,

        Plaintiff,

vs.

KNAUF INTERNATIONAL GmbH, a foreign
corporation; KNAUF INSULATION GmbH,
a foreign corporation,

        Defendants.

_____/

## PLAINTIFF'S FIRST REQUEST FOR PRODUCTION TO DEFENDANTS

Plaintiff, CARLOS HAKIM-DACCACH ("Plaintiff"), by and through his undersigned counsel, and pursuant to Fla. R. Civ. P. 1.350, hereby requests that Defendants, KNAUF INTERNATIONAL GmbH and KNAUF INSULATION GmbH, produce the documents responsive to the following requests within thirty (30) days after service of this Request at the law offices of Heller Waldman, P.L., 3250 Mary Street, Suite 102, Coconut Grove, Florida 33133.

### DEFINITIONS

Whenever used in these Requests, the following definitions shall apply:

1. "You" or "your" shall mean Defendants, Knauf International GmbH and Knauf Insulation GmbH, including their subsidiaries, members, officers, directors, employees, representatives, consultants, contractors, agents or other person acting or purporting to act on its behalf.

2. "Gyptec" shall mean Gyptec, S.A. and all its subsidiaries, including its officers, directors, employees, representatives, consultants, contractors, agents or other person acting or purporting to act on its behalf.

3. "Knauf" shall mean Knauf International, GmbH and Knauf Insulation GmbH, and all their subsidiaries, including its officers, directors, employees, representatives,

{00216767.DOC }

**EXHIBIT "C"**

consultants, contractors, agents or other person acting or purporting to act on its behalf.

4. "CARLOS HAKIM-DACCACH" or "plaintiff" shall mean Plaintiff, Carlos Hakim-Daccach, including his representatives, agents or other persond acting or purporting to act on his behalf.

5. "Document" shall mean any document in your possession or control known to you and the term is used in its customary broad sense to include, without limitation, the following items, whether printed, recorded, filmed, copied or reproduced by any process, or written or produced by hand, and whether or not claimed to be privileged, confidential or personal, and including all originals, masters and copies namely: licenses, communications, correspondence, cablegrams, telex messages, telegrams, facsimile messages, notes and memoranda, summaries, minutes and records of personal conversations and meeting, manuals, conferences, diaries, forecasts, statistical statements, graphs, notebooks, publications and plans, minutes or records of meetings, agendas for meetings, minutes or records of conferences, expressions or statements of policy, lists of persons attending meetings or conferences, reports and/or summaries of interviews, reports and/or summaries of investigations, technical, laboratory and engineering reports, data sheets, charts, sketches and drawings, photographs, films, audio and video tapes and disks, models, physical specimens, things and mock-ups, patents, registrations or marks, copyrights and applications for any of them, patent appraisals and infringement, patentability and validity searches and studies, opinions of counsel, brochures, pamphlets, catalogs and catalog sheets, sales literature and promotional materials, advertisements, displays, circulars, trade letters, notices announcements, publicity, trade, product and press releases, drafts of any documents, revisions of drafts of any documents, memoranda, books, instruments, accounts, sales records including purchase orders, order acknowledgements and invoices, books of account, statements, bills, checks and vouchers, original or preliminary notes, marginal comments appearing on any document, and all other materials of any tangible medium of expression. "Document" also includes and refers to information recorded and/or stored on microfilm, microfiche and the like.

6. "Person" means any natural person, individual, corporation, partnership, company, corporation, sole proprietorship, association, institute, joint venture, firm, governmental body, or other legal entity, whether privately or publicly owned or controlled, for profit or not-for-profit, or partially or fully government owned or controlled.

7. "Communication" means the transmittal of information by any means, including, but not limited to, conversations (whether face-to-face, by telephone or otherwise), meetings, conferences, discussions, negotiations, opinions, letters, e-mails or other electronic or computer transmissions, memoranda, notes, reports and all other oral or written contracts or documents as defined herein.

8. "Any" means one or more.

9. "Describe," "discuss," "analyze," "describing," "discussion," or "analyzing," means any document that, in whole or in part, characterizes, delineates, explicates, deliberates, evaluates, appraises, assesses or provides a general explanation of the specified subject.

10. "Relate to" and "relating to" mean to make a statement about, refer to, discuss, comment on, respond to, analyze, describe, reflect, contain, comprise, identify, or in any way to pertain to, in whole or in part, or otherwise to be used, considered, or reviewed in any way in connection with, the specified subject. Thus, documents that "relate to" a subject also include those which were specifically rejected and those which were not relied or acted upon.

11. The words "or" and "and" shall be read in the conjunctive and not in the disjunctive wherever they appear, and neither of these words shall be interpreted to limit the scope of a request.

12. The singular form of a noun or pronoun shall be considered to include within its meaning the plural form of the noun or pronoun, and vice versa. The masculine form of a noun or pronoun shall be considered to include within its meaning the feminine form of the noun or pronoun, and vice versa.

13. Regardless of the tense employed, all verbs shall be read as applying to the past, present and future as is necessary to make any paragraphs more, rather than less, inclusive.

## INSTRUCTIONS

1.     Answers to this request for production of documents shall be submitted in a form so that the answer follows the retyped request for production of documents to which it applies.

2.     If a privilege or other objection is asserted as to the production of any Document requested herein, please state in detail the nature of the privilege or other objection being asserted, and, with respect to any such Document, please identify the Document or writing by stating (a) the Document's date, subject matter, length (number of pages), and attachments or appendices; (b) the name of author(s) and/or source(s); (c) the recipient(s) to whom the document was distributed, shown or explained, (d) its present custodian, and (e) the present (or last known) location.

3.     In the event that any Document called for by a request has been lost, destroyed or discarded, please identify that Document by stating:  (a) any addressor and addressee, (b) any indicated or blind copies, (c) the Document's date, subject matter, number of pages, and attachments or appendices; (d) all persons to whom the Document was distributed, shown or explained; (e) its date and destruction or discard, manner of loss, destruction or discard, and reason for destruction or discard; and (f) all persons authorizing or carrying out such destruction or discard.

4.     Identify the sources of each of the Documents you produce and identify for each Document produced the specific Request to which it is responsive.

5.     All retrievable information in computer storage shall be kept in native file or program format. The retrievable information in computer storage shall be identified, and produced in its native format in a manner which allows recipient to open and examine, and may require production of related programs and drive data, through mirroring, copying or other means of duplication, all of which should be identified, and made the topic of discovery discussions in production and coordination herewith. These same documents should also be produced in paper printed form within the time frame.  Printing the documents does not relieve the production of the electronic data and materials.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.     Bank statements reflecting the current account in which Knauf is holding in escrow approximately $20,000,000 of the $58,500,000 purchase price Knauf paid for Gyptec (as referenced in Mr. Miguel Fernando Rangel Galvis October 11, 2016 testimony before the Municipal Civil Court of Bogota, attached as Exhibit "A").

     2.     The bank statements that reflect the initial deposit of the $20 million into escrow and any subsequent bank statements that indicate the transfer of all or any portion of these funds from the original account through to the account where they are currently reposed.

     3.     The Asset Purchase Agreement between Knauf and Gyptec referenced in Mr. Rangel's testimony.

     4.     Any escrow agreements or like agreements, correspondence or otherwise relating or pertaining to the placement, maintenance, or removal of the escrowed funds, or requests for removal or transfers concerning same.

Dated: January 17, 2017

> HELLER WALDMAN, P.L.
> 3250 Mary Street, Suite 102
> Coconut Grove, Florida 33133
> Telephone: (305) 448-4144
> Telecopier: (305) 448-4155
>
>
> By: /s/ *Glen H. Waldman*
>     Glen H. Waldman, Esq.
>     Fla. Bar No. 618624
>     Michael A. Sayre, Esq.
>     Fla. Bar No. 17607

### AFFIDAVIT OF STEPHAN H. GIESLER

STATE OF INDIANA

COUNTY OF SHELBY

BEFORE ME, the undersigned notary public, personally came and appeared:

### STEPHAN H. GEISLER

who, after first being duly sworn, did depose and testify as follows:

1. My name is Stephan H. Geisler and I am of the age of majority and a resident of Indiana. I make this Affidavit under oath based upon my personal knowledge.

2. I am General Counsel for Knauf Insulation, Inc.

3. In my role as General Counsel, I have personal knowledge regarding the corporate formation and operations of Knauf Insulation, Inc. and Knauf Insulation GmbH.

4. Knauf Insulation, GmbH is a German limited liability company. The principal business address for Knauf Insulation, GmbH is Am Bahnhof 7, 97346 Iphofen, Germany.

5. To the best of my knowledge, Knauf Insulation GmbH does not conduct any operations or have any employees in the State of Florida.

RHONDA L. KELLEY
NOTARY PUBLIC
STATE OF INDIANA
My Commission Expires July 11, 2019

FURTHER SAYETH AFFIANT NOT

Sworn and subscribed before me,
this 6th day of February, 2017.

NOTARY PUBLIC

**EXHIBIT "D"**

 **CT Corporation**

**Service of Process Transmittal**
01/25/2017
CT Log Number 530575969

**TO:** Stephan Geilser
Energy Response Corps
One Knauf Drive
Shelbyville, IN 46176

**RE:** **Process Served in Indiana**

**FOR:** Knauf Insulation GMBH  (Domestic State: AN)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | CARLOS HAKIM-DACCACH, Pltf. vs. KNAUF INTERNATIONAL GmbH, etc. and KNAUF INSULATION GmbH, etc., Dfts. |
| **DOCUMENT(S) SERVED:** | Summons, Cover Sheet, Verified Complaint, First Request |
| **COURT/AGENCY:** | Miami-Dade County Circuit Court, FL<br>Case # 2017001358CA0143 |
| **NATURE OF ACTION:** | Defendant failure to provide to Hakim his shares in the Panamanian companies, as ordered by several courts |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Indianapolis, IN |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 01/25/2017 at 15:00 |
| **JURISDICTION SERVED :** | Indiana |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days after service, exclusive of the day of service |
| **ATTORNEY(S) / SENDER(S):** | Glen H. Waldman<br>HELLER WALDMAN, P.L.<br>3250 Mary Street, Suite 102<br>Coconut Grove, FL 33133<br>305-448-4144 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  UPS Next Day Air , 1Z0399EX0117582547 |
| **SIGNED:**<br>**ADDRESS:** | C T Corporation System<br>150 West Market Street<br>Suite 800<br>Indianapolis, IN 46204 |
| **TELEPHONE:** | 312-345-4336 |

Page 1 of  1 / AP

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

**EXHIBIT "E"**

printing document

Filing # 51440861 E-Filed 01/20/2017 03:12:22 PM

| X  IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.<br>☐  IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. | | |
|---|---|---|
| **DIVISION**<br>X  CIVIL      ☐ OTHER<br>☐ DISTRICTS | **SUMMONS 20 DAY CORPORATE SERVICE**<br>**(a) GENERAL FORMS** | **CASE NUMBER**<br>2017-001358-CA-01 |
| **PLAINTIFF(S)**<br>Carlos Hakim-Daccach | **VS.  DEFENDANT(S)**<br>Knauf International GmbH, a foreign corporation<br>and Knauf Insulation GmbH, a foreign corporation | **SERVICE** |

THE STATE OF FLORIDA:

To Each Sheriff of the State:

YOU ARE COMMANDED to serve this summons and copy of the complaint or petition, and Request

for Production in this action on defendant(s):  Knauf Insulation GmbH, a foreign corporation, by and

through its Registered Agent, CT Corporation System, 150 West Market Street, Suite 800,

Indianapolis, IN 46204

_____

_____

_____

Each defendant is required to serve written defense to the complaint or petition on
Plaintiff's Attorney:  Glen H. Waldman, Esq., Heller Waldman P.L.

whose address is:  3250 Mary Street, Suite 102, Coconut Grove, FL 33133. Tel.: 305-448-4144

_____

CLOCK IN

within 20 days *  Except when suit is brought pursuant to s. 768.28, Florida Statutes, if the State of Florida, one of its agencies,

or one of its officials or employees sued in his or her official capacity is a defendant, the time to respond shall be 40 days.

When suit is brought pursuant to 768.28, Florida Statutes, the time to respond shall be 30 days. *  after service of this summons

on that defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Clerk Court either before

service on Plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for

the relief demanded in the complaint or petition.

| **HARVEY RUVIN**<br>**CLERK of COURTS** | Natson makes ⌐308631<br><br>**DEPUTY CLERK** | **DATE**<br>1/23/2017 |
|---|---|---|

## AMERICANS WITH DISABILITIES ACT OF 1990
## ADA NOTICE

**"If you are a person with a disability who needs any accommodation in order to
participate in this proceeding, you are entitled, at no cost to you, to the provision of certain
assistance. Please contact the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson
E. Thomas Courthouse Center, 175 NW 1ˢᵗ Ave., Suite 2702, Miami, FL 33128, Telephone
(305) 349-7175; TDD (305) 349-7174, Fax (305) 349-7355 at least 7 days before your
scheduled court appearance, or immediately upon receiving this notification if the time
before the scheduled appearance is less than 7 days; if you are hearing or voice impaired,
call 711."**

CLK/CT. 314 Rev. 02/16                                      Clerk's web address: www.miami-dadeclerk.com

☒ IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.
☐ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.

| DIVISION | | CASE NUMBER |
|---|---|---|
| ☒ CIVIL<br>☐ DISTRICTS<br>☐ FAMILY<br>☐ OTHER | **CIVIL COVER SHEET** | 2017-001358-CA-01 (43) |

| PLAINTIFF | VS. DEFENDANT | CLOCK IN |
|---|---|---|
| Carlos Hakim-Daccach | Knauf International GmbH, a foreign corporation and Knauf Insulation GmbH, a foreign corporation | |

The civil cover sheet and the information contained here does not replace the filing and service of pleadings or other papers as required by law. This form is required by the Clerk of Court for the purpose of reporting judicial workload data pursuant to Florida Statute 25.075. See instructions and definitions on reverse of this form.

**TYPE OF CASE** (If the case fits more than one type of case, select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x in both the main category and subcategory boxes.

☐ 001 - Eminent Domain
☒ 003 - Contracts and Indebtedness
☐ 010 - Auto Negligence
☐ 022 - Products Liability
☐ 023 - Condominium
☐ Negligence - Other
    ☐ 097 - Business Governance
    ☐ 098 - Business Torts
    ☐ 099 - Environmental/Toxin Tort
    ☐ 100 - Third Party Indemnification
    ☐ 101 - Construction Defect
    ☐ 102 - Mass Tort
    ☐ 103 - Negligent Security
    ☐ 104 - Nursing Home Negligence
    ☐ 105 - Premises Liability - Commercial
    ☐ 106 - Premises Liability - Residential
    ☐ 107 - Negligence - Other
☐ Real Property/Mortgage Foreclosure
    ☐ 108 - Commercial Foreclosure $0 - $50,000
    ☐ 109 - Commercial Foreclosure $50,001 - $249,999
    ☐ 110 - Commercial Foreclosure $250,000 - or more
    ☐ 111 - Homestead Residential Foreclosure $0 - $50,000
    ☐ 112 - Homestead Residential Foreclosure $50,001 - $249,999
    ☐ 113 - Homestead Residential Foreclosure $250,000 or more
    ☐ 114 - Non-Homestead Residential Foreclosure $0 - $50,000
    ☐ 115 - Non-Homestead Residential Foreclosure $50,001 - $249,999
    ☐ 116 - Non-Homestead Residential Foreclosure $250,000 or more
    ☐ 117 - Other Real Property Actions $0 - $50,000
    ☐ 118 - Other Real Property Actions $50,001 - $249,999

☐ 119 - Other Real Property Actions $250,000 or more
☐ Professional Malpractice
    ☐ 094 - Malpractice - Business
    ☐ 095 - Malpractice - Medical
    ☐ 096 - Malpractice - Other professional
☐ Other
    ☐ 120 - Antitrust/Trade Regulation
    ☐ 121 - Business Transactions
    ☐ 122 - Constitutional Challenge - Statute or Ordinance
    ☐ 123 - Constitutional Challenge - Proposed amendment
    ☐ 124 - Corporate Trust
    ☐ 125 - Discrimination - Employment or Other
    ☐ 126 - Insurance Claims
    ☐ 127 - Intellectual Property
    ☐ 128 - Libel/Slander
    ☐ 129 - Shareholder Derivative Action
    ☐ 130 - Securities Litigation
    ☐ 131 - Trade Secrets
    ☐ 132 - Trust Litigation
☐ 133 - Other Civil Complaint
    ☐ 009 - Bond Estreature
    ☒ 014 - Replevin
    ☐ 024 - Witness Protection
    ☐ 080 - Declaratory Judgment
    ☐ 081 - Injunctive Relief
    ☐ 082 - Equitable Relief
    ☐ 083 - Construction Lien
    ☐ 084 - Petition for Adversary Preliminary Hearing
    ☐ 085 - Civil Forfeiture
    ☐ 086 - Voluntary Binding Arbitration
    ☐ 087 - Personal Injury Protection (PIP)

## COMPLEX BUSINESS COURT

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order. Yes ☒ No ☐

REMEDIES SOUGHT (check all that apply):

☒     monetary;

☒     non-monetary declaratory or injunctive relief;

☐     punitive

NUMBER OF CAUSES OF ACTION: [ 3 ]

(specify) Replevin, Breach of Contract, Unjust Enrichment

IS THIS CASE A CLASS ACTION LAWSUIT?

☐ Yes

☒ No

HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?

☒ No

☐ Yes    If "Yes", list all related cases by name, case number, and court.

IS JURY TRIAL DEMANDED IN COMPLAINT?

☒ Yes

☐ No

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief.

Signature _____    Florida Bar # _____ 618624 _____

          Attorney or party                                 (Bar # if attorney)

Glen H. Waldman, Esq. _____    01/17/17

(type or print name)                                          Date

Filing # 51274761 E-Filed 01/17/2017 04:45:27 PM

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT,
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO.: 2017-001358-CA-01 (43)

CARLOS HAKIM-DACCACH,

       Plaintiff,

vs.

KNAUF INTERNATIONAL GmbH, a foreign
corporation; KNAUF INSULATION GmbH,
a foreign corporation,

       Defendants.

_____/

## VERIFIED COMPLAINT

Plaintiff, CARLOS HAKIM-DACCACH, by and through his undersigned counsel, sues Defendants KNAUF INTERNATIONAL GmbH ("Knauf International") and KNAUF INSULATION GmbH (collectively "Knauf" or "Defendants"), alleging as follows:

### JURISDICTION, PARTIES AND VENUE

1.     This is a complaint for damages in excess of $15,000, exclusive of attorney's fees and costs, and which is within the jurisdictional limits of this Court.

2.     Plaintiff, Carlos Hakim-Daccach ("Hakim"), is an individual residing in Miami-Dade County, Florida.

3.     Defendant, Knauf International GmbH, is a foreign corporation that does business in Florida and, upon information and belief, maintains a bank account in Miami, Florida.

4.     Defendant, Knauf Insulation GmbH, is a foreign corporation that does business in Florida and, upon information and belief, maintains a bank account in Miami, Florida.

{00220534.DOCX }

5.    Venue is proper in Miami-Dade County, Florida because (a) the property which is the subject of this lawsuit is located in Miami-Dade County, Florida and (b) the causes of action accrued in Miami-Dade County because, among other things, Knauf's wrongful failure to disburse escrowed funds to Hakim occurred in Miami-Dade County.

6.    All conditions precedent for filing and maintaining this action have been performed, waived or excused.

### GENERAL ALLEGATIONS

7.    Gyptec, S.A. ("Gyptec") is a Colombian drywall business. In August 2015, Gyptec sold a majority of its assets to Knauf International.

8.    Hakim is a 33.33% owner of Ukiah International Corp. ("Ukiah") and Arkata Investment, Inc. ("Arkata") (collectively "Panamanian companies). The Panamanian companies own over 99% of Gyptec. As a consequence, Hakim is an approximately 33.33% owner of Gyptec.

9.    Despite being a 33.33% owner of Gyptec, Hakim was not advised of the sale of Gyptec's assets to Knauf International. Hakim – through ongoing litigation with Gyptec in Colombia – was able to discover some facts concerning the sale, but Hakim still does not have all the details regarding the sale, including a copy of the Purchase and Sale Agreement which he was entitled to receive but has not.

10.    Another Gyptec owner is Jorge Hakim Tawil ("Tawil"). Tawil is Hakim's cousin. Tawil is (or, at minimum, at one point was) a fugitive from the law. Tawil was indicted in New York several years ago for bank embezzlement. The criminal case against Tawil is still pending and there remains an active arrest warrant for Tawil.

HELLER WALDMAN, P.L.
3250 MARY STREET, SUITE 102 • COCONUT GROVE, FLORIDA 33133

{00220534.DOCX }

11. In an October 10, 2011 arbitration award ("Award"), a Colombian arbitration tribunal, explicitly recognized Hakim's one-third ownership interest in the Panamanian companies. Under Colombian law, the Award has the same weight and effect as a civil judgment.

12. The Bogota Superior Tribunal (equivalent of a Florida Circuit Court of Appeals) subsequently confirmed the Award, dismissing a motion to vacate the Award – correspondent to an appellate affirmance. Moreover, the Supreme Court of Panama has recently, in an August 31, 2016 ruling, granted recognition and enforcement of the Colombian Award in Panama. In its ruling, the Panama Supreme Court identified that "Carlos Hakim . . . [holds] an ownership interest of 33% of each [of the Panamanian companies]." As such there is no legal doubt that Hakim has such ownership interest and is entitled to his requisite portion of the purchase funds.

13. This acknowledgment, though it was a protracted proceeding, was the equivalent of a full faith and credit recognition, which was necessarily pursued because Tawil refused to turn over the requisite shares in the Panamanian companies based on the two Colombian Tribunals' rulings.

14. In addition to the above noted arbitration, the parties have been engaged in multiple other legal proceedings relative to Hakim's ownership interest in Gyptec and Tawil's mismanagement of Gyptec.

15. One such proceeding was an action that Hakim commenced against Tawil (and other Gyptec officers and directors) for breach of fiduciary duty and embezzlement of corporate funds. This action was filed with the *Superintendencia de Companias* in Colombia.

16. On or about August 2015 and while the *Superintendencia* proceeding was still pending, Gyptec, as noted, sold a majority of its assets to Knauf International, a multinational producer of building material based in Germany, for approximately $58,500,000.

17. Hakim, as noted, was not provided the specifics of the sale. Hakim, however, was just recently able to confirm that, Knauf International, through its due diligence, discovered, among other things, the existence of the *Superintendencia* proceeding. A Knauf representative in a parallel Colombian proceeding recently testified that Knauf International, as a result of the pendency of the *Superintendencia* proceeding, required that approximately $20,000,000.00 of the $58,500,000.00 purchase price be held in escrow until the conclusion the *Superintendencia* proceeding. On June 9, 2016 the *Superintendencia* issued its ruling finding, among other things, that Tawil had breached his fiduciary duties and embezzled funds from Gyptec for his personal use.

18. As referenced above, Hakim's recent knowledge stems from the sworn testimony of a Knauf representative in related litigation in Colombia. Specifically, on October 11, 2016, Miguel Fernando Rangel Galvis, the Legal Representative of Knauf Colombia, testified that the entire purchase transaction occurred through a Knauf account in Miami, Florida and that the $20,000,000.00 escrowed funds were escrowed by Knauf in an account in Miami, Florida. He further testified that it was expected that, upon the termination of the *Superintendencia* proceedings, the $20,000,000.00 would be released.

19. Upon information and belief, the $20,000,000 in escrowed funds remains in an account located in Miami, Florida.

20. Notwithstanding the recognition of Hakim's, one-third ownership interest in Gyptec (through the Panamanian companies) by both the (two) Colombian and (one) Panamanian

tribunals, which entitles him to one-third of the sales proceeds, no effort has been made by Knauf to contact Hakim or to make arrangements to provide Hakim with the $19,498,050.00. (33.33% portion of the $58,500,000 sales price) or one third of the gross sale amount that represent his interest.

21. To date, Hakim has not received any money from the sale of Gyptec to Knauf, notwithstanding his one third ownership.

22. Because of the acts of Tawil in refusing to acknowledge Hakim's legitimate interest, Hakim was shut out of all corporate affairs during the time of the transaction with Knauf. Consequently, Hakim does not possess a copy of the Sales Agreement or any separate agreement (if it exists) for the escrowing of these funds.

23. As the *Superintendencia* ruled against Tawil and in Hakim's favor over six (6) months ago and Hakim has heard nothing in that time, and notwithstanding the prudent actions taken by Knauf to put these funds into escrow at the time of the closing, Hakim wants to insure that these substantial monies are turned over to him forthwith.

24. In addition, because of the past bad acts of Tawil – evidenced by the *Superintendencia* ruling that Tawil previously embezzled funds from Gyptec, his being a fugitive from the law here in the U.S. (due to financial irregularities here) and his complete disregard for both Hakim's ownership interest in Gyptec and the rulings of the various tribunals – Hakim justifiably fears that Knauf will either release the $20,000,000 to Gyptec – a company over which Tawil improperly exercises control – or that Tawil will find a way to abscond to Colombia with the $20,000,000, of which $19,498,050 or whatever amount is equal to 1/3rd the gross sale price, belongs to Hakim.

{00220534.DOCX }

25. Hakim, in fact, has been forced to institute criminal proceedings against Tawil in Colombia as a result of Tawil's failure to provide to Hakim his shares in the Panamanian companies, as ordered by several courts. The Colombian criminal court has already determined that there exists probable cause to pursue the criminal action against Tawil for not complying with the arbitration tribunal's mandate requiring that the shares be provided to Hakim and for abuse of trust as the legal representative of Gyptec.

26. Accordingly, Hakim, is entitled to $19,498,050.00 or the amount equivalent to one third of the gross sale price from the funds that Knauf is holding in escrow and demands that these funds be turned over forthwith.[1]  However, Knauf, instead of disbursing these funds to Hakim, continues to improperly hold the funds in escrow.

27. Hakim has retained the undersigned law firm to represent his interest in these proceedings and has obligated himself to pay it reasonable attorney's fee and court costs.

### COUNT I-REPLEVIN

28. Hakim realleges and hereby incorporates by reference each and every allegation contained within Paragraphs 1 through 27 above as though fully set forth in this cause of action.

29. This is an action to recover possession of personal property in Miami-Dade County, Florida.

30. The description of the property is $19,498,050.00 ("property") of the $20,000,000 being held in escrow by Knauf, or an amount equivalent to one third of the gross sale price.

31. To the best of Hakim's knowledge, information and belief, the property is located in a Knauf bank account in Miami, Florida.

---

[1] To the extent the totality of these funds do not satisfy in full Hakim's one third interest, Hakim reserves the right to pursue the remainder in other proceedings where the money is situated.

6

32. Hakim is entitled to the possession of the property as the 33.33% owner of Gyptec, whose assets Knauf purchased for what is believed the gross sum of $58,500,000.00.

33. The property is wrongfully detained by Knauf. Knauf came into possession of the property by withholding the funds following Knauf's purchase of Gyptec's assets.

34. To Hakim's best knowledge, information and belief, Knauf detains the property because Knauf is unsure as to which Gyptec owners to distribute the property to, though at this juncture any uncertainty that existed has been resolved in favor of Hakim as to one third of the sales amount.

35. The property has not been taken for any tax assessment or fine pursuant to law.

36. The property has not been taken under an execution or attachment against Hakim's property.

WHEREFORE, Plaintiff, Carlos Hakim-Daccach, demands judgment for possession of the property from Defendants, Knauf International, GmbH and Knauf Insulation, GmbH, and any other relief the Court deems just and proper.

## COUNT II-BREACH OF CONTRACT

37. Hakim realleges and hereby incorporates by reference each and every allegation contained within Paragraphs 1 through 27 above as though fully set forth in this cause of action.

38. Knauf International entered into an Asset Purchase Agreement ("Agreement") with Gyptec, pursuant to which it agreed to pay $58,500,000.00 for Gyptec's assets.

39. Hakim is a 33.33% owner of Gyptec and third-party beneficiary to the Agreement.

40. Knauf International has breached the Agreement by not providing to Hakim his portion of the $58,500,000 sales price – $19,498,050.00.

41. As a result of this breach, Hakim has been damaged.

HELLER WALDMAN, P.L.
3250 MARY STREET, SUITE 102 • COCONUT GROVE, FLORIDA 33133

{00220534.DOCX }

WHEREFORE, Plaintiff, Carlos Hakim-Daccach, demands judgment against Defendant Knauf International, GmbH for damages to be proved at trial, including interest, costs and all other relief this Court deems just and proper.

### COUNT III-UNJUST ENRICHMENT
#### (Pleaded in the Alternative to Count II)

42. Hakim realleges and hereby incorporates by reference each and every allegation contained within Paragraphs 1 through 27 above as though fully set forth in this cause of action.

43. Hakim is a 33.33% owner of Gyptec. Hakim, in consequence, is a 33.33% owner of the Gyptec assets.

44. Gyptec's assets were sold to Knauf International in exchange for what is believed to be the gross sum of $58,500,000.00.

45. Knauf International voluntarily accepted and retained Gyptec's assets – 33.33% of which belongs to Hakim.

46. Knauf International, however, retains in escrow $20 million dollars of which Hakim is entitled to $19,498,050.00 (which represents 33.33% of the believed purchase price), or an amount equal to one third of the gross sale price .

47. The circumstances are such that it would be inequitable for Knauf International to accept and retain Hakim's 33.33% of Gyptec's assets without paying the value thereof to Hakim.

WHEREFORE, Plaintiff, Carlos Hakim-Daccach, demands judgment against Defendant Knauf International, GmbH for damages to be proved at trial, including interest, costs and all other relief this Court deems just and proper.

### DEMAND FOR JURY TRIAL

Hakim hereby demands a jury trial on all issues so triable.

HELLER WALDMAN, P.L.
3250 MARY STREET, SUITE 102 • COCONUT GROVE, FLORIDA 33133

{00220534.DOCX }

Dated: January 17, 2017

HELLER WALDMAN, P.L.
3250 Mary Street, Suite 102
Coconut Grove, Florida 33133
Telephone: (305) 448-4144
Telecopier: (305) 448-4155

By: /s/ *Glen H. Waldman*
Glen H. Waldman, Esq.
Fla. Bar No. 618624
Michael A. Sayre, Esq.
Fla. Bar No. 17607

## VERIFICATION

Under penalty of perjury, the undersigned, Carlos Hakim-Daccach, declares that he has

read the foregoing Complaint and that the facts set forth herein are true and correct to the best of

his knowledge and belief.

By:

CARLOS HAKIM-DACCACH

HELLER WALDMAN, P.L.
3250 MARY STREET, SUITE 102 ● COCONUT GROVE, FLORIDA 33133

{00220534.DOCX.}

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT,
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO.: 2017-001358-CA-01 (43)

CARLOS HAKIM-DACCACH,

        Plaintiff,

vs.

KNAUF INTERNATIONAL GmbH, a foreign
corporation; KNAUF INSULATION GmbH,
a foreign corporation,

        Defendants.

_____/

## PLAINTIFF'S FIRST REQUEST FOR PRODUCTION TO DEFENDANTS

Plaintiff, CARLOS HAKIM-DACCACH ("Plaintiff"), by and through his undersigned counsel, and pursuant to Fla. R. Civ. P. 1.350, hereby requests that Defendants, KNAUF INTERNATIONAL GmbH and KNAUF INSULATION GmbH, produce the documents responsive to the following requests within thirty (30) days after service of this Request at the law offices of Heller Waldman, P.L., 3250 Mary Street, Suite 102, Coconut Grove, Florida 33133.

## DEFINITIONS

Whenever used in these Requests, the following definitions shall apply:

1. "You" or "your" shall mean Defendants, Knauf International GmbH and Knauf Insulation GmbH, including their subsidiaries, members, officers, directors, employees, representatives, consultants, contractors, agents or other person acting or purporting to act on its behalf.

2. "Gyptec" shall mean Gyptec, S.A. and all its subsidiaries, including its officers, directors, employees, representatives, consultants, contractors, agents or other person acting or purporting to act on its behalf.

3. "Knauf" shall mean Knauf International, GmbH and Knauf Insulation GmbH, and all their subsidiaries, including its officers, directors, employees, representatives,

consultants, contractors, agents or other person acting or purporting to act on its behalf.

4. "CARLOS HAKIM-DACCACH" or "plaintiff" shall mean Plaintiff, Carlos Hakim-Daccach, including his representatives, agents or other persond acting or purporting to act on his behalf.

5. "Document" shall mean any document in your possession or control known to you and the term is used in its customary broad sense to include, without limitation, the following items, whether printed, recorded, filmed, copied or reproduced by any process, or written or produced by hand, and whether or not claimed to be privileged, confidential or personal, and including all originals, masters and copies namely: licenses, communications, correspondence, cablegrams, telex messages, telegrams, facsimile messages, notes and memoranda, summaries, minutes and records of personal conversations and meeting, manuals, conferences, diaries, forecasts, statistical statements, graphs, notebooks, publications and plans, minutes or records of meetings, agendas for meetings, minutes or records of conferences, expressions or statements of policy, lists of persons attending meetings or conferences, reports and/or summaries of interviews, reports and/or summaries of investigations, technical, laboratory and engineering reports, data sheets, charts, sketches and drawings, photographs, films, audio and video tapes and disks, models, physical specimens, things and mock-ups, patents, registrations or marks, copyrights and applications for any of them, patent appraisals and infringement, patentability and validity searches and studies, opinions of counsel, brochures, pamphlets, catalogs and catalog sheets, sales literature and promotional materials, advertisements, displays, circulars, trade letters, notices announcements, publicity, trade, product and press releases, drafts of any documents, revisions of drafts of any documents, memoranda, books, instruments, accounts, sales records including purchase orders, order acknowledgements and invoices, books of account, statements, bills, checks and vouchers, original or preliminary notes, marginal comments appearing on any document, and all other materials of any tangible medium of expression. "Document" also includes and refers to information recorded and/or stored on microfilm, microfiche and the like.

6. "Person" means any natural person, individual, corporation, partnership, company, corporation, sole proprietorship, association, institute, joint venture, firm, governmental body, or other legal entity, whether privately or publicly owned or controlled, for profit or not-for-profit, or partially or fully government owned or controlled.

7. "Communication" means the transmittal of information by any means, including, but not limited to, conversations (whether face-to-face, by telephone or otherwise), meetings, conferences, discussions, negotiations, opinions, letters, e-mails or other electronic or computer transmissions, memoranda, notes, reports and all other oral or written contracts or documents as defined herein.

8. "Any" means one or more.

9. "Describe," "discuss," "analyze," "describing," "discussion," or "analyzing," means any document that, in whole or in part, characterizes, delineates, explicates, deliberates, evaluates, appraises, assesses or provides a general explanation of the specified subject.

10. "Relate to" and "relating to" mean to make a statement about, refer to, discuss, comment on, respond to, analyze, describe, reflect, contain, comprise, identify, or in any way to pertain to, in whole or in part, or otherwise to be used, considered, or reviewed in any way in connection with, the specified subject. Thus, documents that "relate to" a subject also include those which were specifically rejected and those which were not relied or acted upon.

11. The words "or" and "and" shall be read in the conjunctive and not in the disjunctive wherever they appear, and neither of these words shall be interpreted to limit the scope of a request.

12. The singular form of a noun or pronoun shall be considered to include within its meaning the plural form of the noun or pronoun, and vice versa. The masculine form of a noun or pronoun shall be considered to include within its meaning the feminine form of the noun or pronoun, and vice versa.

13. Regardless of the tense employed, all verbs shall be read as applying to the past, present and future as is necessary to make any paragraphs more, rather than less, inclusive.

## INSTRUCTIONS

1.     Answers to this request for production of documents shall be submitted in a form so that the answer follows the retyped request for production of documents to which it applies.

2.     If a privilege or other objection is asserted as to the production of any Document requested herein, please state in detail the nature of the privilege or other objection being asserted, and, with respect to any such Document, please identify the Document or writing by stating (a) the Document's date, subject matter, length (number of pages), and attachments or appendices; (b) the name of author(s) and/or source(s); (c) the recipient(s) to whom the document was distributed, shown or explained, (d) its present custodian, and (e) the present (or last known) location.

3.     In the event that any Document called for by a request has been lost, destroyed or discarded, please identify that Document by stating:  (a) any addressor and addressee, (b) any indicated or blind copies, (c) the Document's date, subject matter, number of pages, and attachments or appendices; (d) all persons to whom the Document was distributed, shown or explained; (e) its date and destruction or discard, manner of loss, destruction or discard, and reason for destruction or discard; and (f) all persons authorizing or carrying out such destruction or discard.

4.     Identify the sources of each of the Documents you produce and identify for each Document produced the specific Request to which it is responsive.

5.     All retrievable information in computer storage shall be kept in native file or program format. The retrievable information in computer storage shall be identified, and produced in its native format in a manner which allows recipient to open and examine, and may require production of related programs and drive data, through mirroring, copying or other means of duplication, all of which should be identified, and made the topic of discovery discussions in production and coordination herewith. These same documents should also be produced in paper printed form within the time frame.  Printing the documents does not relieve the production of the electronic data and materials.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.     Bank statements reflecting the current account in which Knauf is holding in escrow approximately $20,000,000 of the $58,500,000 purchase price Knauf paid for Gyptec (as referenced in Mr. Miguel Fernando Rangel Galvis October 11, 2016 testimony before the Municipal Civil Court of Bogota, attached as Exhibit "A").

2.      The bank statements that reflect the initial deposit of the $20 million into escrow and any subsequent bank statements that indicate the transfer of all or any portion of these funds from the original account through to the account where they are currently reposed.

3.      The Asset Purchase Agreement between Knauf and Gyptec referenced in Mr. Rangel's testimony.

4.      Any escrow agreements or like agreements, correspondence or otherwise relating or pertaining to the placement, maintenance, or removal of the escrowed funds, or requests for removal or transfers concerning same.

Dated: January 17, 2017

HELLER WALDMAN, P.L.
3250 Mary Street, Suite 102
Coconut Grove, Florida 33133
Telephone: (305) 448-4144
Telecopier: (305) 448-4155

By: /s/ *Glen H. Waldman*
        Glen H. Waldman, Esq.
        Fla. Bar No. 618624
        Michael A. Sayre, Esq.
        Fla. Bar No. 17607

IN THE CIRCUIT COURT OF
THE ELEVENTH JUDICIAL CIRCUIT,
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CARLOS HAKIM-DACCACH,        )     Case No. 2017-001358-CA-01(43)
                              )
          Plaintiff,      )
v.                            )
                              )
KNAUF INTERNATIONAL GmbH,  )
a foreign corporation;           )
KNAUF INSULATION GmbH,     )
a foreign corporation,           )
                              )
          Defendants.    )
_____/

## NOTICE OF FILING NOTICE OF REMOVAL

**PLEASE TAKE NOTICE** that Defendant, Knauf Insulation GmbH, specially appearing

for the limited purpose of giving notice of filing of the attached Notice of Removal,[1] as required

by 28 U.S.C. § 1446(d), has removed the captioned action to the United States District Court for

the Southern District of Florida, Miami Division.[2]

**PLEASE TAKE FURTHER NOTICE** that by filing the Notice of Removal with the

United States District Court for the Southern District of Florida and filing this Notice of Filing of

Notice of Removal with this Court, this Court is divested of jurisdiction of the captioned action,

and this Court shall proceed no further with respect to the captioned action unless and until it is

remanded. *See* 28 U.S.C. § 1446(d).

Submitted this ____ day of February, 2017.

---

[1] No waiver of any kind or admission of fact, law, liability, or damages is intended by this Notice of Filing of Notice of Removal. Defendant reserves all defenses, including but not limited to the defenses of insufficient service of process, failure to comply with the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, lack of personal jurisdiction, and improper venue, as well as all objections and motions under the Florida Rules of Civil Procedure.

[2] A copy of Defendant's Notice of Removal is attached as Exhibit A.

**EXHIBIT "F"**

Respectfully submitted,

**BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC**
SunTrust Center
200 South Orange Ave., Ste. 2900
P.O. Box 1549 (32802)
Orlando, FL 32801
Tel:  (407) 422-6600
Fax:  (407) 841-0325

*Counsel for Defendant, specially appearing
for the limited purpose of giving the notice of
notice of removal required by 28 U.S.C. §1446(d)*


By:   /s/_____
      JAMES M. TALLEY
      Florida Bar No.: 331961
      jtalley@bakerdonelson.com
      vmcfarland@bakerdonelson.com
      fedcts@bakerdonelson.com
      KYLE A. DIAMANTAS
      Florida Bar No.: 106916
      kdiamantas@bakerdonelson.com
      sdenny@bakerdonelson.com
      fedcts@bakerdonelson.com

2

## CERTIFICATE OF SERVICE

I hereby certify that on February _____, 2017, a copy of the foregoing pleading was served upon counsel for Plaintiff by U.S. Mail and electronic mail:

    Glen H. Waldman
    Michael A. Sayre
    HELLER WALDMAN, P.L.
    3250 Mary Street, Suite 102
    Coconut Grove, FL  33133

/s/ _____

4836-2393-1457 v1
2616900-013834 02/01/2017