United States District Court
for the
Southern District of Florida

| Carlos Hakim-Daccach, Plaintiff, | ) | |
|---|---|---|
| | ) | |
| v. | ) | Civil Action No. 17-20495-Civ-Scola |
| | ) | |
| Knauf International GmbH, and others, Defendants. | ) | |

## **Omnibus Order**

     Plaintiff Carlos Hakim-Daccach seeks leave from the Court to amend his complaint for the second time. (ECF No. 50.) At the same time Defendants Knauf International GmbH, Knauf Insulation, GmbH, and Banca de Bogota, S.A. have previously filed motions to dismiss Hakim-Daccach's first amended complaint. (ECF Nos. 30, 31, 49.) Only Knauf Insulation and Banco de Bogota's motions to dismiss were fully briefed. Having reviewed Hakim-Daccach's first amended complaint, the Court concludes all six counts, as alleged, should be dismissed. With some minor changes, Hakim-Daccach realleges these six counts in his proposed second amended complaint and adds seven other counts. Since the Court finds all thirteen counts would necessarily fail, allowing Hakim-Daccach to file his proposed second amended complaint would be futile. However, because it appears it is possible, upon better allegations, that Hakim-Daccach may be able to state a claim for relief on some counts, the Court affords him one more opportunity to amend his complaint, consistent with the analysis and findings below. The Court thus **denies** Hakim-Daccach's motion for leave to file his proposed second amended complaint (**ECF No. 50**) but affords him the opportunity to file a revised second amended complaint, consistent with this order as well as his obligations under Federal Rule of Civil Procedure 11(b). Hakim-Daccach must file this revised second amended complaint on before **December 6, 2017**. The Court also **grants** Banco de Bogota's motion to dismiss (**ECF No. 30**), finding two of the first amended complaint's counts against the bank should be dismissed with prejudice and one without. In anticipation of the filing of Hakim-Daccach's revised second amended complaint, and because Hakim-Daccach appears to be dropping Knauf Insulation from the suit, the Court **denies as moot** both Knauf Insulation's motion to dismiss and Knauf International's not-yet-fully-briefed motion to dismiss (**ECF Nos. 31 & 49**).

### 1. Legal Standard

In accordance with Federal Rule of Civil Procedure 15(a)(2), a party seeking to amend its complaint may do so only with the opposing party's written consent or the court's leave. According to the rule, leave should be freely given when justice so requires. Rule 15(a) reflects a policy of "liberally permitting amendments" and absent a "substantial reason to deny leave to amend" a plaintiff's request should be granted. *Espey v. Wainwright*, 734 F.2d 748, 750 (11th Cir. 1984). "Although leave to amend shall be freely given when justice so requires, a motion to amend may be denied on numerous grounds such as undue delay, undue prejudice to the defendants, and futility of the amendment." *Maynard v. Bd. of Regents of Div. of Universities of Florida Dep't of Educ. ex rel. Univ. of S. Florida*, 342 F.3d 1281, 1287 (11th Cir. 2003) (quotations omitted). "An amendment is considered futile when the claim, as amended, would still be subject to dismissal." *Boyd v. Warden, Holman Corr. Facility*, 856 F.3d 853, 864 (11th Cir. 2017).

A court considering a motion to dismiss must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although a pleading need only contain a short and plain statement of the claim showing that the pleader is entitled to relief, a plaintiff must nevertheless articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqubal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)) (internal punctuation omitted). A court must dismiss a plaintiff's claims if she fails to nudge her "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### 2. Background

Hakim-Daccach seeks to recover millions of dollars he alleges Banco de Bogota and German companies Knauf International and Knauf de Colombia, S.A.S.[1] have wrongfully withheld from him. According to the allegations in his complaint, Hakim-Daccach is a 33.33% owner of two Panamanian companies which in turn own over 99% of Gyptec, S.A., a Colombian drywall business. By

---

[1] Hakim-Daccach has replaced Defendant Knauf Insulation with Defendant Knauf de Colombia in his proposed second amended complaint.

virtue of this business structure, Hakim-Daccach claims a 33.33% ownership interest in Gyptec.

According to Hakim-Daccach, another Gyptec part owner, Jorge Hakim Tawil (Hakim-Daccach's cousin), has improperly taken control over Gyptec and shut Hakim-Daccach out of certain sales proceeds. He alleges that, at the direction of Tawil, Knauf International purchased the majority of Gyptec's assets in 2015 for $58.5 million. According to Hakim-Daccach, Tawil was inappropriately working both sides of the sales transaction. Hakim-Daccach also recounts that when Knauf International became aware of Colombian legal proceedings involving Tawil, it placed $20 million of the purchase price into an escrow account with Banco de Bogota in Miami. Hakim-Daccach submits that much of this $20 million represents approximately 33.33% of the purchase price and is owed to him directly, as part owner of Gyptec. Hakim-Daccach also alleges that another approximately $10 million is being held in another Banco de Bogota account, in Gyptec's name, and that he is entitled to a portion of these funds as part of a related dividend distribution that he is owed from Gyptec.

Hakim-Daccach, in this case, has not sued either Tawil or Gyptec for their alleged wrongdoing. Instead he seeks to recover from two of the Knauf entities who were part of the sale of Gyptec's assets and the bank who is holding the two escrow funds described above. The majority of his claims are based on various Florida common law theories (replevin, breach of contract, unjust enrichment, equitable lien, aiding and abetting a breach of fiduciary duty, civil conspiracy to commit a breach of fiduciary duty, tortious interference with an advantageous business relationship, money had and received, and rescission) but he seeks redress under Florida's Deceptive and Unfair Trade Practices Act as well.

3. **The claims common to both Hakim-Daccach's first amended complaint and proposed second amended complaint are subject to dismissal.**

In his proposed second amended complaint, Hakim-Daccach includes all six of the claims presented in his first amended complaint, with only minor changes. Since none of these claims would survive dismissal, the Court denies his request to include these counts as pleaded in a second amended complaint. Further, upon consideration of Banco de Bogota's motion to dismiss, the Court dismisses with prejudice two of the first amended complaint's claims against the bank as more fully discussed below.

## A. Replevin

Counts 5 and 6 of Hakim-Daccach's proposed amended complaint are very similar to counts 1 and 2 of his first amended complaint. In count 5, Hakim-Daccach seeks to replevy $19,498,050.00 from Knauf International and Knauf de Colombia which is in an escrow account at Banco de Bogota in Miami. In count 6, Hakim-Daccach seeks to replevy $7,475,316.70 from Banco de Bogota itself which he claims is in another escrow account, allegedly associated with Gyptec, also held through Banco de Bogota in Miami. Additionally, Hakim-Daccach has clarified in his proposed complaint that he seeks the money "whether it be in tangible or intangible form" and that "[t]he property includes any cash on hand, such as currency (coined metal and paper bank notes) or account debtors' checks." (Prop. 2d Am. Compl. ¶ 84, ECF No. 50-1, 20.) This claim fails as stated.

"Under Florida law, replevin lies for any wrongful taking or wrongful detention of any specific personal property." *Land-Cellular Corp. v. Zokaites*, 463 F. Supp. 2d 1348, 1353 (S.D. Fla. 2006) (Lenard, J.) (citing Fla. Stat. § 78.01; *Williams Mgmt. Enters., Inc. v. Buonauro,* 489 So.2d 160, 161 n. 1 (Fla. 5th DCA 1986)). Further, "[b]ecause replevin involves recovery of the personalty itself, the personal property subject to recovery via replevin has always been restricted to the recovery of tangible personalty capable of specific identification and manual seizure." *Land-Cellular*, 463 F. Supp. 2d at 1353. Thus, "replevin is inappropriate and unavailable when the personalty sought to be recovered is, as a practical matter, incapable of being specifically described by the party moving for the writ, and located, identified, and seized by the marshal executing the writ." *Id.* In sum, replevin is simply "not available to recover a sum of money claimed by the plaintiff and possessed by the plaintiff only in the form of funds on deposit in the defendant's bank checking account." *Id.*; *see also Charter Sch. Capital, Inc. v. N.E.W. Generation Preparatory High Sch. of Performing Arts, Inc.*, No. 15-CIV-60966, 2015 WL 2239061, at *3 (S.D. Fla. May 12, 2015) (Bloom, J.) ("Funds in a deposit account are not the type of specific, tangible property capable of particular identification and manual seizure toward which the writ of replevin is aimed."); *Textron Fin. Corp. v. Unique Marine, Inc.*, No. 08-10082-CIV-MOORE, 2008 WL 4716965, at *4 (S.D. Fla. Oct. 22, 2008) (Simonton, Mag. J.) ("Nor can a writ of replevin reach intangible property in the form of checking accounts.").

The replevin claims alleged in counts 1 and 2 of Hakim-Daccach's first amended complaint are therefore due to be dismissed. Further, the Court denies Hakim-Daccach's request for leave to amend the replevin claims because his proposed counts 5 and 6, despite the language added, also necessarily fail for

the same reasons. Based on Banco de Bogota's fully-briefed motion to dismiss, the replevin claim against the bank is dismissed **with prejudice**. Because Hakim-Daccach did not have an opportunity to respond to Knauf International's motion to dismiss, however, his replevin claim against Knauf International is dismissed **without prejudice.**

### B. Breach of Contract

Count 9 of the proposed amended complaint is virtually identical to count 3 of the first amended complaint except that it is brought against Knauf de Colombia in addition to Knauf International. In his breach of contract claim, Hakim-Daccach alleges that Knauf International (and Knauf de Colombia in the proposed amended complaint) entered into a sales agreement with Gyptec, agreeing to pay $58.5 million for the assets it was purchasing. According to Hakim-Daccach, the Defendants breached that agreement by failing to pay him his portion of the sales price. This claim fails.

"A person who is not a party to a contract may not sue for breach of that contract where that person receives only an incidental or consequential benefit from the contract." *Caretta Trucking, Inc. v. Cheoy Lee Shipyards, Ltd.*, 647 So. 2d 1028, 1030–31 (Fla. 4th DCA 1994). Hakim-Daccach does not allege that he was a party to the contract. And even if he alleged that he was due to receive some consequential benefit from the contract, "[w]here the contract is designed solely for the benefit of the formal parties thereto, a third person cannot maintain an action thereon." *Blu-J, Inc. v. Kemper C.P.A. Grp.*, 916 F.2d 637, 640 (11th Cir. 1990) (quoting *State of Fla. for Use & Benefit of Westinghouse Elec. Supply Co. v. Wesley Const. Co.*, 316 F. Supp. 490, 495 (S.D. Fla. 1970), *aff'd sub nom. State of Florida, for Use & Benefit of Westinghouse Elec. Supply Co.*, 453 F.2d 1366 (5th Cir. 1972). Hakim-Daccach has failed to allege facts supporting his personal entitlement to one-third of the proceeds from the sale of Gyptec's assets to either Knauf International or Knauf de Colombia under the terms of the contract. In short, Hakim-Daccach has alleged neither a breach of contract claim nor facts that would permit him to proceed under a third-party beneficiary claim. Thus the Court dismisses count 3 of the first amended complaint and denies leave to amend with respect to count 9 of the proposed second amended complaint. Only if Hakim-Daccach can allege facts establishing his status as either a party or third-party beneficiary may he include a breach of contract claim in his amended complaint.

**C. Unjust Enrichment**

Count 10 of the proposed amended complaint is virtually identical to the first count 4 of the first amended complaint[2] except that it is brought against Knauf de Colombia in addition to Knauf International. Count 11 in the proposed complaint, against Banco de Bogota, is the same as the second count 4 in the first amended complaint. With respect to the Knauf entities, Hakim-Daccach alleges that Knauf has accepted and retained 33.33% of Gyptec's assets without paying Hakim for the value of them (which Hakim-Daccach says equates to $19,498,050). With respect to the bank, Hakim-Daccach claims that the bank is inequitably retaining dividend funds from Gyptec that should have been distributed to him.

Under Florida law, "[a] claim for unjust enrichment has three elements: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof." *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012). Hakim-Daccach's claim against the Knauf entities fails, in part, because he has not alleged facts upon which the Court can infer that the Knauf entities have not paid the value of the 33.33% of Gyptec's assets that Hakim-Daccach alleges they have retained. Hakim-Daccach even acknowledges that Knauf International paid $58,500,000 for Gyptec's assets. (Am. Compl. ¶ 67, ECF No. 14, 13; Prop. 2d Am. Compl. ¶ 115, ECF No. 50-1, 24.) He does not explain why Knauf's holding of some $20 million of the purchase price in an escrow account, as provided for by agreement of the parties to the sale (Gyptec and Knauf), renders its retention of 33.33% of the assets inequitable. While Hakim-Daccach may argue that Knauf paid the wrong entity, he has not alleged that Knauf has failed to "pay[] the value thereof." In other words, Hakim-Daccach does not allege that Knauf has received a windfall: although he complains that the sale of Gyptec's assets was executed improperly, he never alleges that Knauf underpaid. Additionally, just because Hakim-Daccach is a 33.33% owner of Gyptec, as he alleges, does not mean that he, as a shareholder, conferred a benefit on Knauf himself. Moreover, Hakim-Daccach, by his own allegations, does not even own Gyptec directly. Rather, he claims to be a 33.33% owner of two other companies, in Panama, which in turn allegedly own over 99% of Gyptec. (Proposed 2d Am. Compl. at ¶ 11.) "Under Florida law, the doctrine of unjust enrichment (sometimes called a 'contract implied in law,' 'quasi-contract,' and various other

---

[2] Hakim-Daccach labeled three of his claims "Count IV" in his first amended complaint.

terms) governs the situation in which one party has conferred a valuable benefit on another in the absence of a contract, but under circumstances that make it unjust to retain it without giving compensation." *City of Miami v. Bank of Am. Corp.*, 800 F.3d 1262, 1287 (11th Cir. 2015) (citations, quotations, and alterations omitted), *cert. granted sub nom. Bank of Am. Corp. v. City of Miami, Fla.*, 136 S. Ct. 2544 (2016), and *vacated and remanded, on other grounds, sub nom. Bank of Am. Corp. v. City of Miami, Fla.*, 137 S. Ct. 1296 (2017). Here, non-party Gyptec, not Hakim-Daccach, conferred the benefit; further, the benefit was conferred in accordance with an alleged contract. Hakim-Daccach certainly didn't confer any benefit on Knauf directly and does not allege facts from which the Court could infer that he did so even indirectly.

  Hakim-Daccach's claim for unjust enrichment in his proposed count 11 against the bank similarly fails. Hakim-Daccach does not allege who conferred the "benefit" upon Banco de Bogota in placing funds in a second escrow account at Banco de Bogota held, according to Hakim-Daccach's proposed complaint, by Gyptec. In his first amended complaint, Hakim-Daccach suggests that Knauf conferred, at least indirectly, the benefit: "$10 million, which likely comes from the sale to Knauf, is reposed in the second escrow account." (Am. Compl. at ¶ 36.) On the other hand, in his proposed second amended complaint, Hakim-Daccach now suggests vaguely that the funds in this account derive from a dividend distribution from Gyptec profits in 2015. (Proposed 2d Am. Compl. at ¶ 43–44.) Hakim-Daccach does not, however, address who actually deposited the funds. Again, to the extent a benefit has been conferred on the bank, whoever deposited the funds—not Hakim-Daccach—has conferred it. Since Hakim-Daccach doesn't even know who deposited the funds, it would seem impossible for him allege that he conferred the funds himself, even indirectly. Further Hakim-Daccach's claim to an entitlement to a portion of those funds does not alone render the bank's maintenance of those funds in Gyptec's account inequitable. Lastly, even if an argument could be made that the bank benefits from the funds in Gyptec's escrow account by way of earning fees or interest, this is not a *direct* benefit as required under Florida law. *Johnson v. Catamaran Health Sols., LLC*, 687 F. App'x 825, 830 (11th Cir. 2017) (noting that "plaintiffs' payments to a defendant's subsidiary company did not constitute a direct benefit to the defendant even though the defendant ultimately retained at least a portion of the payments") (citing in *Extraordinary Title Services, LLC v. Florida Power & Light Co.*, 1 So.3d 400, 401, 404 (Fla. 3d DCA 2009). As a result, those payments could not support an unjust enrichment claim against the defendant.

  Ultimately, the Court dismisses the first and second count 4 of the first amended complaint and denies leave to amend with respect to counts 10 and 11

of the proposed second amended complaint. Although there is a remote, though unlikely, possibility that Hakim-Daccach can state a claim for unjust enrichment against a Knauf entity, no such claim would lie against the bank under these circumstances. Thus the second count 4, against Banco de Bogota, is dismissed **with prejudice**. If Hakim-Daccach can allege facts satisfying the elements of unjust enrichment against the Knauf entities, he may include such a claim in his second amended complaint.

### D. Equitable Lien

Count 12 of the proposed second amended complaint, demanding the imposition of an equitable lien, is very similar to the third count 4 of the first amended complaint. There are only two differences. First, the proposed complaint replaces Defendant Knauf Insulation with Knauf de Colombia. Second, the proposed complaint adds that, in addition to retaining the funds by mistake, the bank and the Knauf entities may also be retaining them through "knowingly improper behavior." (Proposed 2d Am. Compl. at ¶ 125.) Neither change salvages Hakim-Daccach's claim for an equitable lien.

Under Florida law, "an equitable lien can only exist when a party has a 'special right to a particular property' and there is no adequate remedy at law." *Garcia v. Santa Maria Resort, Inc.*, 528 F. Supp. 2d 1283, 1297 (S.D. Fla. 2007) (King, J.) (quotations omitted). Hakim-Daccach has not alleged facts establishing that he has no adequate remedy at law against either Banco de Colombia or the Knauf entities for their alleged wrongful retention of the funds he claims. *Cf. In re Dorado Marine, Inc.*, 321 B.R. 581, 587 (Bankr. M.D. Fla. 2005) (finding a plaintiff entitled to an equitable lien where the court found it "highly unlikely" that the plaintiff would be able to recover "100 percent of his claim" if he was "forced to file a claim for what he has paid as an unsecured creditor"). Hakim-Daccach's unsupported claims that he "fears" that Knauf will either release the funds to Tawil or that Tawil himself will drain the accounts (Prop. 2d Am. Compl. at ¶¶ 53–54) are not enough to support a finding that Hakim-Daccach has no adequate remedy at law.

Hakim-Daccach attempts to base his claim for an equitable lien on his cursory allegation that "general consideration of right and justice require" the imposition of an equitable lien. But, imposing "an equitable lien based on 'general consideration of right and justice' generally 'requires some equitable basis supporting a court's equitable jurisdiction such as fraud, mutual mistake, estoppel or reprehensible conduct.'" *In re Alford*, 403 B.R. 123, 135 (Bankr. M.D. Fla. 2009) (citing *In re Diamond,* 196 B.R. 635, 639 (Bankr. S.D. Fla. 1996). Hakim-Daccach's allegation that Banco de Bogota and the Knauf entities'

retention of the funds at issue was either "[t]hrough mistake . . . or knowingly improper behavior" is insufficient to nudge his claim past the motion-to-dismiss stage.

For these reasons, the Court dismisses the third count 4 of Hakim-Daccach's amended complaint and denies him leave to amend with respect to count 12 of the proposed second amended complaint. The dismissal of the third count 4 is without prejudice.

### 4. All of the new claims Hakim-Daccach alleges in his proposed second amended complaint necessarily fail and are therefore futile as presented.

In his proposed second amended complaint, Hakim-Daccach adds seven new claims. Because none of these counts states a claim upon which relief can be granted, his motion to file the proposed second amended complaint is denied.

#### A. Aiding and Abetting a Breach of Fiduciary Duty

In count 1 of his proposed amended complaint, Hakim-Daccach alleges a claim against Knauf International for aiding and abetting a breach of fiduciary duty. To establish a claim for aiding and abetting a breach of fiduciary duty under Florida law, a plaintiff must set forth the following elements: "(1) a fiduciary duty on the part of the primary wrongdoer, (2) a breach of this fiduciary duty, (3) knowledge of the breach by the alleged aider and abettor and (4) the aider and abettor's substantial assistance or encouragement of the wrongdoing." *AmeriFirst Bank v. Bomar*, 757 F. Supp. 1365, 1380 (S.D. Fla. 1991). In order to assert a breach of fiduciary duty, in turn, a plaintiff must plead: "(1) existence of a fiduciary duty; (2) a breach of that duty; and (3) that such breach was the proximate cause of plaintiff's damages." *Med. & Chiropractic Clinic, Inc. v. Oppenheim*, 246 F. Supp. 3d 1329, 1332 (M.D. Fla. 2017). Hakim-Daccach's proposed claim against Knauf International for aiding and abetting a breach of fiduciary duty fails because he has not alleged facts that show that the underlying breach of fiduciary duty by Tawil "was the proximate cause of plaintiff's damages." Hakim-Daccach continues to miss a substantial connection between Tawil's alleged improper dealings with respect to Gyptec and the damages he claims as a result of Knauf's involvement: simply owning 33.33% of two Panamanian companies that in turn own over 99% of Gyptec does not therefore automatically entitle Hakim-Daccach, without more, to 33.33% of the proceeds of the sale of Gyptec assets. Thus, to the extent his claim for aiding and abetting a breach of fiduciary duty is based on his claim to a share of the proceeds, it fails. Further, Hakim-Daccach does not link Tawil's alleged breach to any other damages related to Tawil's dealings with Knauf that are separate

and distinct from injuries suffered by other shareholders. For example, Hakim-Daccach's allegations that a court in Colombia found Tawil to have breached his fiduciary duty, requiring him to return property to Gyptec, according to the proposed second amended complaint, has nothing to do with Knauf. (Proposed 2d Am. Compl. at ¶ 33.) Similarly, Tawil's alleged failure to provide Hakim-Daccach with his shares in two Panamanian companies (*id.* at ¶ 34) and his alleged use of Gyptec "accounts to further improperly use company funds and otherwise defraud Hakim-Daccach" (*id.* at 50) are also unconnected, according to the proposed complaint, to Knauf.

While Hakim-Dacach has conceivably properly alleged many instances of Tawil's breaching his fiduciary duty and Knauf International's aiding and abetting of some of those breaches, he has simply not connected those specific breaches as proximate causes to any particular damages he has incurred.

## B. Civil Conspiracy to Commit a Breach of Fiduciary Duty

Hakim-Daccach's proposed claim against Knauf International for civil conspiracy to commit a breach of fiduciary duty suffers from the same infirmities that derailed his aiding and abetting claim. To state a claim for a civil conspiracy under Florida law, a plaintiff must allege: "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *Carney v. IDI-DX, Inc.*, No. 2:12-CV-00449-FTM-29, 2013 WL 4080326, at *3 (M.D. Fla. Aug. 13, 2013). Hakim-Daccach alleges Knauf International took the following overt acts in furtherance of the conspiracy: executing the sales transaction of Gyptec's assets through which Tawil was to receive a commission representing a conflict of interest; providing funds to Tawil in a way that allowed him to improperly use them; and generally "accommodating and assisting Tawil's efforts to breach his fiduciary duties to shareholders vis-à-vis the sale." (Proposed 2d Am. Compl. at ¶ 68.) Even assuming these overt acts are in "pursuance of the conspiracy," Hakim-Daccach does not link any of these acts to damages that he himself has incurred. Again, Hakim-Daccach's status as a 33.33% shareholder of the company does not equate, without more, to his entitlement to proceeds from the sale or dividend distributions. Further, Hakim-Daccach has not set forth facts that support any claim he may have for generalized damages incurred by Gyptec itself.

### C. Tortious Interference with an Advantageous Business Relationship

Hakim-Daccach's claim for tortious interference with an advantageous business relationship also fails. "Under Florida law, the elements of tortious interference with a business relationship are: (1) the existence of a business relationship that affords the plaintiff existing or prospective legal rights; (2) the defendant's knowledge of the business relationship; (3) the defendant's intentional and unjustified interference with the relationship; and (4) damage to the plaintiff. *Int'l Sales & Serv., Inc. v. Austral Insulated Prod., Inc.*, 262 F.3d 1152, 1154 (11th Cir. 2001). To begin with the proposed complaint fails to allege what particular "existing or prospective legal rights" Hakim-Daccach was afforded by virtue of his alleged part ownership of Gyptec. Further, Hakim-Daccach has again failed to link Knauf International's alleged acts of interference to any particular damage suffered by Hakim-Daccach. Once more, all of the acts alleged appear only to have potentially damaged Gyptec: complaining that Knauf International's interference was generally "at the expense of shareholders" is not enough. Instead Hakim-Daccach must allege damage that is particular to him.

### D. Florida Deceptive and Unfair Trade Practices Act

Hakim-Daccach's FDUTPA claim also fails. A consumer claim under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *Virgilio,* 680 F.3d at 1338 n. 25. Even if Hakim-Daccach has successfully pleaded a deceptive act or unfair practice, his claim still fails because he has not properly alleged the basis for his entitlement to damages. Further, even if he had properly alleged his damages entitlement, he has failed to sufficiently allege a connection between those damages and any deceptive act or unfair practice on the part of Knauf.

Further, "FDUTPA applies only to action that occurred within the state of Florida." *Carnival Corp. v. Rolls-Royce PLC*, No. 08-23318-CIV-SEITZ, 2009 WL 3861450, at *6 (S.D. Fla. Nov. 17, 2009) (citing *Millennium Communications & Fulfillment, Inc. v. Office of Attorney General*, 761 So. 2d 1256, 1262 (Fla. 3d DCA 2000) (noting that the purpose of FDUTPA is "to prohibit unfair, deceptive and/or unconscionable practices which have transpired within the territorial boundaries of this state without limitation")). Hakim-Daccach fails to allege, in his proposed complaint, that any of the complained of acts occurred in Florida. The fact that many of the complained of improper acts happen to be indirectly associated with bank accounts in Miami is not enough. While it is true that "the statute does not limit its protection to acts occurring exclusively in Florida," Hakim-Daccach doesn't allege any improper acts that actually occurred in

Florida at all. *Eli Lilly & Co. v. Tyco Integrated Sec., LLC.*, No. 13-80371-CIV, 2015 WL 11251732, at *4 (S.D. Fla. Feb. 10, 2015).

### E. Money Had and Received

Both of Hakim-Daccach's proposed claims, as alleged, for money had and received are futile. Under Florida law, the elements of a claim for money had and received and unjust enrichment are the same. *Kelly v. Palmer, Reifler, & Assocs., P.A.*, 681 F. Supp. 2d 1356, 1384 (S.D. Fla. 2010) (Moreno, J.). Thus, for many of the reasons explained above, in section 3.C., Hakim-Daccach's claims for money had and received are both futile as alleged. Hakim-Daccach does not allege sufficient facts establishing that the funds held in either escrow account originated from him or belong to him, nor does he establish that it is inequitable for either Knauf or the bank to retain the funds relative to Hakim-Daccach's interests. These proposed claims necessarily fail as well.

### F. Cancelation/Rescission

Hakim-Daccach's proposed claim for cancelation or rescission of the purchase agreement between Knauf and Gyptec also fails. Hakim-Daccach claims that, simply by virtue of his status as a 33.33% owner of Gyptec he is a third-party beneficiary of the purchase agreement. "Under Florida law, a third party is an intended beneficiary of a contract between two other parties only if a direct and primary object of the contracting parties was to confer a benefit on the third party." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 982 (11th Cir. 2005). Further, "[i]f the contracting parties had no such purpose in mind, any benefit from the contract reaped by the third party is merely 'incidental,' and the third party has no legally enforceable right in the subject matter of the contract." *Id.* Here, Hakim-Daccach cursorily asserts in his proposed complaint, without any supporting factual allegations, that he is a third-party beneficiary to the agreement. (Proposed Am. Compl. at ¶ 129.) To make up for this shortcoming, Hakim-Daccach submits, in support of his motion for leave to file an amended complaint, that two factors support his status as a third-party beneficiary. First, he says that "it appears, based on the Knauf representative's testimony, that the contract specifically references the litigation between Hakim, Gyptec, and Tawil and sets aside a $20 million escrow fund as a result." (Pl.'s Reply, ECF No. 60, 8.) Second, he claims that, even if he is not specifically mentioned, the agreement "was intended to benefit a class of person of which he is a member—Gyptec owners—and thus he is a third[-]party beneficiary." (*Id.*) To begin with, neither contention is actually alleged, as stated, in the proposed complaint. Additionally, neither allegation, even if properly set forth in the complaint, is

sufficient to show that Hakim-Daccach is in fact a third-party beneficiary to the contract between Knauf and Gyptec. Rather, "[t]he contracting parties' intent to benefit the third party must be *specific* and must be *clearly expressed* in the contract in order to endow the third party beneficiary with a legally enforceable right." *Bochese*, 405 F.3d at 982 (11th Cir. 2005) (emphasis in original). Ultimately, Hakim-Daccach has not alleged facts from which the Court could infer that he has sustained injuries that are separate and distinct from the injuries sustained by Gyptec itself or the other shareholders generally. Consequently, his proposed claim for rescission necessarily fails.

### 5. Conclusion

Hakim-Daccach has requested leave to file a proposed second amended complaint. Upon careful review, the Court finds none of the thirteen counts alleged in the proposed amended complaint states a claim upon which relief may be granted. The Court therefore **denies** Hakim-Daccach's motion (**ECF No. 50**). At the same time, the Court has reviewed Hakim-Daccach's first amended complaint and finds all six counts fail to state a claim upon which relief may granted. To that end, the Court **grants** Banco de Bogota's motion to dismiss (**ECF No. 30**) and dismisses **count 2**, for replevin, and **the second count 4**, for unjust enrichment, both against Banco de Colombia, with prejudice. The Court affords Hakim-Daccach the opportunity, however, to file a revised second amended complaint, consistent with the analysis above and the Court's dismissal of the remaining claims in the first amended complaint without prejudice. This revised second amended complaint must be filed on or before **December 8, 2017** or Hakim-Daccach's case will be dismissed in its entirety. In filing an amended complaint, the Court cautions Hakim-Daccach to bear in mind his obligations under Rule 11(b). Lastly, in accordance with the Court's evaluation of the counts pleaded in Hakim-Daccach's first amended complaint, in conjunction with the anticipated filing of Hakim-Daccach's revised second amended complaint, the Court **denies as moot** Defendant Knauf International and Knauf Insulation's motions to dismiss (**ECF No. 31 & 49**).

**Done and ordered** in chambers, at Miami, Florida, on November 21, 2017.

_____
Robert N. Scola, Jr.
United States District Judge